No. 23-13914
(*consolidated with Nos. 23-13916 & 23-13921*)

In the

# United States Court of Appeals
## for the Eleventh Circuit

---

Alpha Phi Alpha Fraternity, Inc., et al.,

*Plaintiffs-Appellees*,

v.

Secretary of State of Georgia,

*Defendant-Appellant*.

---

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division.
No. 1:21-cv-05337 — Hon. Steve C. Jones, *District Judge*

---

## SUPPLEMENTAL BRIEF OF
## THE SECRETARY OF STATE OF GEORGIA

---

Bryan P. Tyson
  *Special Asst. Att'y General*
David J. Younker
Tyson Younker LLC
1225 Johnson Ferry Road
Suite 600-A
Marietta, Georgia 30068
(678) 223-3160
btyson@tysonyounker.law

Christopher M. Carr
  *Attorney General of Georgia*
John Henry Thompson
  *Solicitor General*
Elijah J. O'Kelley
  *Principal Deputy
  Solicitor General*
Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3373
jhthompson@law.ga.gov

*Counsel for the Secretary of State of Georgia*

No. 23-13916
(*consolidated with Nos. 23-13914 & 23-13921*)

In the

# United States Court of Appeals
## for the Eleventh Circuit

Coakley Pendergrass, et al.,

*Plaintiffs-Appellees,*

v.

Secretary of State of Georgia,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division.
No. 1:21-cv-05339 — Hon. Steve C. Jones, *District Judge*

## SUPPLEMENTAL BRIEF OF
## THE SECRETARY OF STATE OF GEORGIA

Bryan P. Tyson
 *Special Asst. Att'y General*
David J. Younker
Tyson Younker LLC
1225 Johnson Ferry Road
Suite 600-A
Marietta, Georgia 30068
(678) 223-3160
btyson@tysonyounker.law

Christopher M. Carr
 *Attorney General of Georgia*
John Henry Thompson
 *Solicitor General*
Elijah J. O'Kelley
 *Principal Deputy*
 *Solicitor General*
Office of the Georgia
 Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3373
jhthompson@law.ga.gov

*Counsel for the Secretary of State of Georgia*

No. 23-13921
(*consolidated with Nos. 23-13914 & 23-13916*)

In the

# United States Court of Appeals
## for the Eleventh Circuit

---

Annie Lois Grant, et al.,

*Plaintiff-Appellees,*

v.

Secretary of State of Georgia,

*Defendant-Appellant.*

---

On Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division.
No. 1:22-cv-00122 — Hon. Steve C. Jones, *District Judge*

---

## SUPPLEMENTAL BRIEF OF
## THE SECRETARY OF STATE OF GEORGIA

---

Bryan P. Tyson
  *Special Asst. Att'y General*
David J. Younker
Tyson Younker LLC
1225 Johnson Ferry Road
Suite 600-A
Marietta, Georgia 30068
(678) 223-3160
btyson@tysonyounker.law

Christopher M. Carr
  *Attorney General of Georgia*
John Henry Thompson
  *Solicitor General*
Elijah J. O'Kelley
  *Principal Deputy
  Solicitor General*
Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3373
jhthompson@law.ga.gov

*Counsel for the Secretary of State of Georgia*

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Albert M. Pearson LLC: Counsel for Amicus;

Alpha Phi Alpha Fraternity, Inc., Respondent-Appellee;

Adegbile, Debo, Counsel for Respondents-Appellees;

Aiken, De'Ericka, Counsel for Respondent-Appellees;

State of Alabama, Amicus;

American Civil Liberties Union Foundation, Inc., Counsel for Respondents-Appellees;

American Civil Liberties Union Foundation of Georgia, Inc., Counsel for Respondents-Appellees;

American Civil Liberties Union-New Jersey, Counsel for Amicus;

Anderson, Carol, Amicus;

Bird, Brenna, Counsel for Amicus;

Bloom Parham, LLP, Counsel for Amicus;

Bokat-Lindell, Noah B., Former Counsel for Intervenor;

Boone, Robert, Counsel for Respondents-Appellees;

Bowdre, Alexander Barrett, Counsel for Amicus;

Bowles, Jasmine, Amicus;

C-1 of 12

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

Bowen, Brennan, Counsel for Amicus

Boyle, Jr., Donald P., Former Counsel for Petitioner-Appellant;

Burton, Orville Vernon, Amicus;

Brachman, Paul D., Former Counsel for Amicus;

Brennan Center for Justice at New York University School of Law, Amicus;

Brown, Anthony G., Counsel for Amicus;

Brown, Phil, Respondent-Appellee;

State of California, Amicus;

Calvo-Friedman, Jenessa, Former Counsel for Respondents-Appellees;

Campbell, Andrea Joy, Counsel for Amicus;

Carr, Christopher, Attorney General of Georgia, Counsel for Petitioner-Appellants;

Cheung, Ming, Counsel for Respondents-Appellees;

Clark, Charity R., Counsel for Amicus;

Clarke, Kristen, Counsel for Intervenor;

Common Cause, Amicus;

State of Colorado, Amicus;

State of Connecticut, Amicus;

Constitutional Accountability Center, Amicus;

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

Crowell & Moring LLP, Counsel for Amicus

Data, Sonika, Counsel for Respondents-Appellees;

Dauber, Michael S., Former Counsel for Amicus;

Davis, Alexander S., Counsel for Amicus;

Dechert LLP, Counsel for Amicus;

State of Delaware, Amicus;

DiGiuseppe, Marisa A., Counsel for Respondents-Appellees;

District of Columbia, Amicus;

Dixit, Anuj, Former Counsel for Respondent-Appellees;

Douglas, Maura, Counsel for Respondents-Appellees;

Draper, Paul M., Former Counsel for Petitioner-Appellant;

Election Law Clinic at Harvard Law School, Amicus;

Ellison, Keith, Counsel for Amicus;

Fair Districts GA, Amicus;

Ferguson, Robert W., Counsel for Amicus;

Fidell, Eugene R., Counsel for Amicus;

Fitch, Lynn, Counsel for Amicus;

State of Florida, Amicus;

Flynn, Erin H., Former Counsel for Intervenor;

Ford, Aaron D., Counsel for Amicus;

C-3 of 12

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

Frazzette, Sean, Counsel for Amicus;

Freeman, Daniel J., Former Counsel for Intervenor;

Freidlin, Akiva, Counsel for Respondents-Appellees;

Frey, Aaron M., Counsel for Amicus;

GALEO Latino Community Development Fund, Inc., Amicus;

Garabadu, Rahul, Counsel for Respondents-Appellees;

Geaghan-Breiner, Charlotte, Counsel for Respondents-Appellees;

Genberg, Jack, Counsel for Amicus;

Geiger, Soren, Former Counsel for Amicus;

Georgia Coalition for the People's Agenda, Amicus;

Georgia Department of Law, Counsel for Petitioner-Appellant;

Georgia State Conference of the NAACP, Amicus;

Glenn, Katie Bailey, Respondent-Appellee;

Glenn, Kenneth, Respondent-Appellee;

Goldman, David N., Former Counsel for Intervenor;

Gorod, Brianne Jenna, Counsel for Amicus;

Graves, Cheryl, Amicus;

Greenbaum, Jon, Counsel for Amicus;

Greenwood, Ruth M., Counsel for Amicus;

Harrison, Keith, Counsel for Amicus;

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

State of Hawaii, Amicus;

Hawley, Jonathan Patrick, Former Counsel for Respondent-
  Appellants;

Heard, Bradley E., Counsel for Amicus;

Heaven, Astor H.L., Counsel for Amicus;

Hessel, Daniel J., Counsel for Amicus;

Hilgers, Michael T., Counsel for Amicus;

Houk, Julie M., Counsel for Amicus;

State of Illinois, Amicus;

State of Indiana, Amicus;

State of Iowa, Amicus;

Ivey, Marvis McDaniel, Amicus;

Isaacson, Cory, Counsel for Respondents-Appellees;

Jacoutout, Bryan F., Former Counsel for Petitioner-Appellant;

Jackson, Toni Michelle, Counsel for Amicus;

James, Letitia, Counsel for Amicus;

Jamieson, Nathan, Counsel for Amicus;

Jennings, Kathleen, Counsel for Amicus;

Jones, Michael B., Former Counsel for Respondents-Appellees;

Jones, The Hon. Steve, United States District Court Judge;

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

Kastorf Law LLP, Counsel for Amicus

Kastorf, Kurt J., Counsel for Amicus;

State of Kansas, Amicus;

Keyssar, Alexander, Amicus

Kim, Eliot, Former Counsel for Respondents-Appellees;

Kim, Taeyoung, Counsel for Respondents-Appellees;

Knudsen, Austin, Counsel for Amicus;

Kobach, Kris W., Counsel for Amicus;

Kousser, J. Morgan, Amicus;

Krevolin & Horst, LLC, Counsel for Respondents-Appellees;

Lakin, Sophia Lin, Counsel for Respondents-Appellees;

LaCour, Edmund, Former Counsel for Amicus;

LaRoss, Diane, Former Counsel for Petitioner-Appellant;

Lawyers' Committee for Civil Rights Under Law, Counsel for
    Amicus;

League of Women Voters of Georgia, Inc., Amicus;

Lee, Jason, Former Counsel for Intervenor;

Lee, Theresa J., Counsel for Amicus;

Lopez, Anne E., Counsel for Amicus;

Love-Olivo, Cassandra Nicole, Counsel for Amicus;

C-6 of 12

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

State of Louisiana, Amicus;

State of Maine; Amicus;

State of Maryland, Amicus;

Marshall, Steve, Counsel for Amicus;

State of Massachusetts, Amicus;

May, Caitlyn Felt, Former Counsel for Respondents-Appellees;

Mayer Brown, LLP, Counsel for Amicus;

McGowan, Charlene, Former Counsel for Petitioner-Appellant;

Miller, Alexander W., Former Counsel for Respondents-Appellees;

Miller, Kelsey A., Counsel for Respondents-Appellees;

Miller, Lauren, Counsel for Amicus;

State of Minnesota, Amicus;

State of Mississippi, Amicus;

Mitchell, Cassandra, Counsel for Respondents-Appellees;

State of Montana, Amicus;

Moody, Ashley, Counsel for Amicus;

Morrisey, Patrick, Counsel for Amicus;

Murill, Liz, Counsel for Amicus;

National Republican Redistricting Trust, Amicus;

State of Nebraska, Amicus;

USCA11 Case: 23-13914    Document: 185    Date Filed: 05/29/2026    Page: 11 of 33

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

Neronha, Peter F., Counsel for Amicus;

State of Nevada, Amicus;

State of New Jersey, Amicus;

State of New York, Amicus;

State of North Carolina, Amicus;

State of North Dakota, Amicus;

O'Donnell, Courtney, Counsel for Amicus;

O'Kelley, Elijah J., Principal Deputy Solicitor General, Counsel for Petitioner-Appellant

State of Oregon, Amicus;

Paradise, Loree Anne, Former Counsel for Petitioner-Appellant;

Paul, Weiss, Rifkind, Wharton & Garrison LLP, Counsel for Amicus;

Paxton, Ken, Counsel for Amicus;

Pearson, III, Albert Matthews, Counsel for Amicus;

Perkins, Brianne, Amicus;

Petrany, Stephen J., Former Counsel for Petitioner-Appellant;

Phatak, Ashwin P., Counsel for Amicus;

Platkin, Matthew J., Counsel for Amicus;

Raffensperger, Brad, in his official capacity as Secretary of State of Georgia, Petitioner-Appellant;

C-8 of 12

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

Raoul, Kwame, Counsel for Amicus;

Reyes, Sean D., Counsel for Amicus;

State of Rhode Island, Amicus;

Rollins-Boyd, David, Counsel for Amicus;

Rokita, Theodore E., Counsel for Amicus;

Rosenberg, Ezra D., Counsel for Amicus;

Rosenblum, Ellen F., Counsel for Amicus;

Rothfield, Charles, A., Counsel for Amicus;

Rudenskey, Yurij, Former Counsel for Amicus;

Ruiz Toro, Juan M., Counsel for Respondents-Appellees;

Savitsky, Ari J., Counsel for Respondent-Appellees;

Schwalb, Brian L., Counsel for Amicus;

Shaw, Abigail, Former Counsel for Respondents-Appellees;

Sivaram Anuradha, Former Counsel for Respondents-Appellees;

Sixth District of the African Methodist Episcopal Church, Respondent-Appellee;

Smith, Casey Katharine, Former Counsel for Respondents-Appellees;

Smith, Gambrell & Russell, LLP, Former Counsel for Petitioner-Appellant;

State of South Carolina, Amicus;

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

Southern Poverty Law Center, Counsel for Amicus;

Stein, Joshua H., Former Counsel for Amicus;

Stewart, Janice, Respondent-Appellee;

Stewart, Michael Elliot, Former Counsel for Intervenor;

Strickland, Frank B., Counsel for Petitioner-Appellant;

Taylor English Duma LLP, Counsel for Petitioner-Appellant;

Torchinsky, Jason B., Counsel for Amicus;

Trento, Andrea W., Counsel for Amicus;

Tulin, Leah, Counsel for Amicus;

State of Texas, Amicus;

Thomas, Ursula, Amicus

Thompson, John Henry, Solicitor General, Counsel for Petitioner-
    Appellant;

Tong, William, Counsel for Amicus;

Tsai, Denise, Counsel for Respondents-Appellees;

Tyson, Bryan P., Counsel for Petitioner-Appellant;

Underwood, Barbara D., Counsel for Amicus;

United States of America, Former Intervenor;

United States Department of Justice, Counsel for Intervenor;

State of Utah, Amicus;

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

Vale, Judith N., Counsel for Amicus;

Valerio-Esene, Amanda, Counsel for Amicus;

Van Zile, Caroline S., Counsel for Amicus;

Varghese, Geroge P., Counsel for Respondents-Appellees;

Vaughan, Elizabeth Marie Wilson, Former Counsel for Petitioner-Appellant;

State of Vermont, Amicus;

Webb, Bryan K., Counsel for Petitioner-Appellant;

Weigel, Daniel H., Former Counsel for Petitioner-Appellant;

Weiser, Philip J., Counsel for Amicus;

Weitzman, Samuel, Former Counsel for Respondents-Appellees;

State of West Virginia, Amicus;

Willard, Russell D., Counsel for Petitioner-Appellant;

Williams, Ayana, Former Counsel for Respondents-Appellees;

Williams, H. Benjamin, Amicus;

Williams, II, Edward Henderson, Former Counsel for Respondents-Appellees;

Wilmer Cutler Pickering Hale and Door LLP, Counsel for Respondents-Appellees;

Wilson, Alan, Counsel for Amicus;

Woods, Eric T., Respondent-Appellee;

*Alpha Phi Alpha Fraternity v. Sec'y of State of Ga.*, No. 23-13914;
*Pendergrass v. Sec'y of State of Ga.*, No. 23-13916;
*Grant v. Sec'y of State of Ga.*, No. 23-13921

Yale Law School Supreme Court Clinic, Counsel for Amicus;

Younker, David J., Counsel for Petitioner-Appellant;

Young, Sean Jengwei, Former Counsel for Respondents-Appellees;

Zabel, Joseph D., Counsel for Respondents-Appellees

       Counsel further certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ *John Henry Thompson*
John Henry Thompson

C-12 of 12

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................ii

Introduction................................................................................ 1

Argument.................................................................................. 3

   I.  *Callais* answers three dispositive questions raised by the Secretary in this appeal........................................................ 3

      A.  Section 2 requires a plaintiff to disentangle race from partisanship, including at *Gingles* Three....................... 3

      B.  The totality-of-the-circumstances test requires evidence of intentional, present-day racial discrimination in voting. .......................................................................... 7

      C.  To remain constitutional, Section 2 must operate within the Fifteenth Amendment's guardrails. .......................... 9

  II.  *Callais* also revises the first *Gingles* precondition. ............ 11

Conclusion ............................................................................... 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. S.C. State Conf. of the NAACP,*
  602 U.S. 1 (2024) ............................................................ 5

*City of Boerne v. Flores,*
  521 U.S. 507 (1997) ........................................................ 9

*Davis v. Chiles,*
  139 F.3d 1414 (11th Cir. 1998) ............................... 2, 13

*In re Ghandtchi,*
  705 F.2d 1315 (11th Cir. 1983) .................................. 2

*Louisiana v. Callais,*
  146 S.Ct. 1131 (2026) ...................................... 1, 3–13

*United States v. Durham,*
  795 F.3d 1329 (11th Cir. 2015) ................................ 13

*United States v. McCullough,*
  851 F.3d 1194 (11th Cir. 2017) ................................ 14

*Van Buren v. United States,*
  593 U.S. 374 (2021) ................................................. 14

**Statutes**

52 U.S.C. § 10301(b) ..................................................... 4, 5

**Other Authorities**

Gov. Brian P. Kemp, A Proclamation Convening the
  General Assembly of Georgia in Special Session
  (May 13, 2026) ........................................................... 2

ii

## INTRODUCTION

The Supreme Court's recent decision in *Louisiana v. Callais*, 146 S. Ct. 1131 (2026), is a watershed. To be sure, important aspects of *Callais* were already supported by a sound reading of preexisting law. *See generally* Opening Br.; CA11 Doc. 175. But *Callais* also broke new legal ground in several ways. For one, *Callais* represents the Court's first systematic interpretation of Section 2's text and its implications for districting litigation. The Court also identified the constitutional guardrails within which Section 2 must operate. And most important, *Callais* expressly updated the entire *Gingles* framework.

This Court ordered the Secretary to explain how *Callais* affects this appeal. It requires reversal. *Callais* assigns plaintiffs the burden of disentangling race from partisanship at the third *Gingles* precondition; alters the totality-of-the-circumstances inquiry by requiring a focus on intentional racial discrimination in voting; and clarifies that, to remain constitutional, Section 2 must operate as a prophylactic against racist policies. The Secretary raised each issue in this appeal. And each is dispositive, because Plaintiffs did not—and cannot—comply with this updated framework and because the district court found the State's goals were partisan, not racial. Doc. 333 at 262, 477, 490–91.

1

But *Callais* goes even further.  The district court concluded that Plaintiffs satisfied the first *Gingles* precondition by showing that it was *possible* to add more majority-black districts, relying on illustrative maps developed using racial data.  *See* Doc. 333 at 200–01, 275.  Although the Secretary disputed that point below, he did not contest it on appeal given *Davis v. Chiles*, 139 F.3d 1414 (11th Cir. 1998).  But *Callais* squarely rejected *Davis*, on which the district court expressly relied, by imposing a new, two-pronged requirement on Section 2 plaintiffs to submit illustrative maps (1) drawn *without* considering race that (2) achieve the State's lawful districting goals as successfully as the State's own maps.  In this way, too, *Callais* dooms the judgment below.

Because *Callais* resolves this appeal, this Court should reverse (or at least vacate and remand).  In addition, Governor Kemp recently convened a special session of the General Assembly to replace the maps challenged here with new maps "to take effect for the 2028 election cycle."  Gov. Brian P. Kemp, A Proclamation Convening the General Assembly of Georgia in Special Session (May 13, 2026), https://tinyurl.com/bdz2wnap.  Any resulting legislation may moot this litigation, which would also necessitate vacatur of the district court's judgment.  *See In re Ghandtchi*, 705 F.2d 1315, 1316 (11th Cir. 1983).

## ARGUMENT

I. ***Callais*** **answers three dispositive questions raised by the Secretary in this appeal.**

This Court ordered the Secretary to identify the "issues raised on appeal" for which "*Callais* alters the appropriate legal analysis and how." CA11 Doc. 182 at 4. As the Secretary's merits briefs demonstrate, many of the principles in *Callais* could be derived from preexisting law. But to dispel all doubt, the Supreme Court also expressly "update[d]" the *Gingles* "framework," *Callais*, 146 S. Ct. at 1159, and held for the first time that Section 2 is subject to constitutional limitations under the Fifteenth Amendment and the congruence-and-proportionality standard, *id.* at 1155. By doing so, *Callais* provided unambiguous answers to three questions raised by the Secretary in this appeal.

### A. Section 2 requires a plaintiff to disentangle race from partisanship, including at *Gingles* Three.

At the heart of this appeal is a dispute over whether a Section 2 plaintiff must "disentangle race from … partisanship." Opening Br. 20; *compare id.* at 1–4, 9–10, 14–16, 18–29; Reply Br. 4–19; *with* APA Br. 14–24; Grant/Pendergrass Br. 26–37. The Secretary argues that Plaintiffs cannot show "racial bloc voting" without proving "that *race*, rather than ordinary partisan politics, explains voting patterns." Opening Br. 18–19.

3

*Callais* adopted the Secretary's rule: To satisfy the third *Gingles* precondition, plaintiffs "must show that voters engage in racial bloc voting that cannot be explained by partisan affiliation"—in short, they must "disentangl[e] race and politics." 146 S. Ct. at 1159 (quotation omitted).  And *how* the Court got there is just as important.  Unlike *Gingles*, which "paid insufficient attention to the language of" Section 2, *id.* at 1147, *Callais* began with the text, which disclaims any right to proportional representation while promising minority voters an "opportunity" to "elect" preferred candidates equivalent to that of "other members of the electorate."  52 U.S.C. § 10301(b).

*Callais* carefully identified the relevant textual "baseline"—*i.e.*, the comparator for a minority group's electoral "opportunity"—as "the chance enjoyed by nonminority voters to secure the election of their preferred candidates."  146 S. Ct. at 1154.  And that "chance" is necessarily a product of "voting preferences of other voters in the district" together with districting "parameters."  *Id.* at 1154–55.  Thus, the Court reasoned, Section 2 entitles minority voters "to nothing less and nothing more" than "whatever opportunity" for political success "results from the application of the State's combination of permissible criteria."  *Id.* at 1155.

4

"Properly understood," then, Section 2 "does not intrude on States' prerogative to draw districts based on nonracial factors"—including "to achieve partisan advantage." *Id.* at 1156. So, when a State's map "was drawn for partisan purposes," a plaintiff must "disentangle race from politics." *Id.* at 1156–57 (quoting *Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 9 (2024)). Simply put, "if a [Section 2] plaintiff cannot disentangle race from the State's race-neutral considerations, including politics, then [Section 2] cannot impose liability." *Id.* at 1157. It is as simple as that.

*Callais* operationalized this rule in several ways. *See id.* at 1158–59, 1161–62; *see also* Part II, *infra*. But as relevant here to the Secretary's appellate argument under the third *Gingles* precondition, *Callais* made clear that "racial bloc voting" means *racial* bloc voting, not *partisan* bloc voting. *See* 146 S. Ct. at 1159 ("To satisfy the second and third preconditions … plaintiffs must provide an analysis that controls for party affiliation."). In all events, the task of Section 2 litigation is—and must be—"to demonstrate that minority plaintiffs have 'less opportunity' than their majority counterparts because of race, not just because of partisan affiliation." *Id.* (quoting 52 U.S.C. § 10301(b)); *see also id.* at 1162 (applying this rule to the Louisiana case).

The district court expressly refused to hold Plaintiffs to that burden based on its interpretation of pre-*Callais* law.  *See*, *e.g.*, Doc. 333 at 235–36; Doc. 268 at 42.  Instead, it relied on "the strong connection between race and partisanship," Doc. 333 at 453–54—precisely the opposite of what *Callais* requires.  Nor, as the Secretary has explained, did Plaintiffs voluntarily comply with the same disentanglement requirement they steadfastly refused to acknowledge.  *See, e.g.*, Opening Br. 29–31; Reply Br. 15–18.  And Plaintiffs' one (halfhearted) attempt to retrofit such a showing on appeal relied on an expert who "concluded that the Democratic primaries were '*not a barrier*' for Black-preferred candidates."  Doc. 333 at 151 (emphasis added) (quoting Doc. 385 at 120); *see also* Reply Br. 18–19.  In short, Plaintiffs did not come close to carrying their "disentanglement burden" under *Callais*.  146 S. Ct. at 1157.

This issue alone provides this Court with all it needs to reverse.  The *Gingles* preconditions are just that—prerequisites to Section 2 liability.  And after *Callais*, a Section 2 plaintiff who does not "disentangle race and party when determining whether there is racially polarized voting," Reply Br. 4, has no claim.  *See, e.g.*, *Callais*, 146 S. Ct. at 1159 (discussing "second and third preconditions").  Plaintiffs are squarely in that boat.

6

### B. The totality-of-the-circumstances test requires evidence of intentional, present-day racial discrimination in voting.

The Secretary also challenged the district court's totality-of-the-circumstances analysis, arguing that it ignored evidence of the success of "black-preferred candidates" in favor of a hodgepodge of "supposed 'disparate impacts.'" Opening Br. 4, 36; *see id.* at 35–42; Reply Br. 19–25. Plaintiffs likewise relied on "state actions that have a discriminatory effect" and embraced the court's analysis of the Senate factors. Grant/Pendergrass Br. 38–40; APA Br. 31–37.

*Callais* resolved this dispute by rejecting Plaintiffs' box-checking model in favor of a unifying principle: "[T]he 'totality of circumstances' inquiry must focus on evidence that has more than a remote bearing on what the Fifteenth Amendment prohibits: present-day intentional racial discrimination regarding voting." 146 S. Ct. at 1160. The "germane" inputs are "*current* data and *current* political conditions that shed light on *current* intentional discrimination." *Id.* (quotation omitted and emphases added). If "it is hard to find pertinent evidence relating to intentional present-day voting discrimination, that is cause for celebration." *Id.* Conversely, a court errs by focusing on historical practices or "present-day disparities … characterized as the ongoing effects of societal discrimination." *Id.* (quotation omitted).

7

*Callais* rejected the methodology the district court used in its totality-of-the-circumstances analysis. Because Georgia no longer engages in the intentional discrimination of decades past, Doc. 333 at 217, the district court concluded only that Georgia's present-day voting practices "disproportionately impact Black voters," *id.* at 219; *see also id.* at 214, 224–25, 227, 229, 431, 437, 442, 447, 484. It also relied on assorted racial disparities in voting and society generally. *See, e.g.*, *id.* at 242–50.

Setting aside other "legal and factual errors," Reply Br. 19, none of this can pass muster under *Callais*. To show "a plausible likelihood of intentional discrimination," a Section 2 plaintiff must "disentangle race from politics" and provide "evidence that black voters ha[ve] faced intentional discrimination in recent years." *Callais*, 146 S. Ct. at 1162. It is never enough to rely on a state's history or on a mechanical application of "the nine Senate Report factors." *Id.* In short, Plaintiffs' "analysis ha[s] its priorities backwards." *Id.* *Callais* mandates a judicial laser focus on "intentional present-day voting discrimination," *id.* at 1160, and the record in this case lacks such evidence. Instead, as the district court found, "[o]ver the last fifty years Georgia has become increasingly … politically open to Black voters." Doc. 333 at 210. Just so—and that finding is conclusive. *See* Opening Br. 35–43.

8

### C. To remain constitutional, Section 2 must operate within the Fifteenth Amendment's guardrails.

The Secretary also argued that *if* Section 2 in fact "requires what the district court ordered," then it "is unconstitutional as applied." Opening Br. 43. The statute enforces the Fifteenth Amendment's prohibition on *intentional* discrimination, and "to ensure such legislation remains within its constitutional bounds, it must be congruent and proportional to the constitutional violations it purports to deter." *Id.* at 46 (citing *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)); *see also id.* at 44–57; Reply Br. 25–35. For their part, Plaintiffs insisted that the congruence-and-proportionality test does not apply to the Fifteenth Amendment, but that if it does, "Congress may impose race-conscious remedies" for "voting practices that are racially disparate in impact." APA Br. 49; Grant/Pendergrass Br. 42–47.

*Callais* forecloses Plaintiffs' position. The Supreme Court held (for the first time) that Fifteenth Amendment enforcement legislation must indeed comply with *Boerne*'s congruence-and-proportionality standard. *Callais*, 146 S. Ct. at 1155–56. And it explained that Section 2 can remain "sufficiently congruent with and proportional to the Amendment's prohibition" on "*intentional* racial discrimination" only if courts faithfully apply the updated *Gingles* framework. *Id.* at 1155. Put differently, Section 2 "fit[s]

9

within Congress's … enforcement power" *provided* the statute "imposes liability only when the circumstances give rise to a strong inference that intentional discrimination occurred." *Id.* at 1156. Reading Section 2 "to outlaw a map solely because it fails to provide a sufficient number of majority-minority districts would create a right that the Amendment does not protect," *id.*, and transform a prophylactic against intentional discrimination into a "tool for advancing a partisan end," *id.* at 1163.

In short, *Callais* demolishes Plaintiffs' premise that Section 2 "applies whenever black voters prefer a political party that tends to lose." Reply Br. 32. Because that race-based "partisan boost" would exceed Congress's Fifteenth Amendment authority, *id.*, Plaintiffs' attempt to "exploit" Section 2 "for partisan purposes" must end, *Callais*, 146 S. Ct. at 1158. The Court's holding that a constitutional Section 2 "imposes liability only when the evidence supports a strong inference that the State intentionally drew its districts to afford minority voters less opportunity because of their race," *id.* at 1157, means Plaintiffs cannot prevail. They did not try to establish that "strong inference," *id.*, and the district court *rejected* it, finding that Georgia drew its maps not for racial reasons but to "capitalize on a partisan advantage," Doc. 333 at 262; *see id.* at 477, 490–91. That is dispositive.

10

## II. *Callais* also revises the first *Gingles* precondition.

Any one of *Callais*'s straightforward answers to the questions above provides enough to resolve this appeal in the Secretary's favor. But this Court also invited the Secretary to identify any "new issues" on which *Callais* is dispositive. CA11 Doc. 182 at 5. Foremost among those is the district court's misapplication of the first *Gingles* precondition—which *Callais* fundamentally changed, overturning Circuit precedent in the process.

Before *Callais*, plaintiffs routinely satisfied the first *Gingles* precondition merely by showing that additional majority-minority districts *could* be drawn. *See Callais*, 146 S. Ct. at 1159, 1161. This case was no different. Plaintiffs' experts admitted to using racial data to develop illustrative maps with additional majority-black districts. One expert "testified that he considers race when creating an illustrative plan that would satisfy the first *Gingles* precondition because '[t]hat's part of the inquiry.'" Doc. 333 at 80 (citation omitted). Another testified that he "use[d] … racial information" to draw illustrative maps, *id.* at 116, and that "it was necessary for him to consider race as part of his analysis because 'the *Gingles* 1 precondition is looking at whether majority Black districts can be created,'" *id.* at 129 (citation omitted). The district court signed off on all of this. *See, e.g., id.* at 93, 107, 114, 132.

11

Moreover, although Plaintiffs' illustrative maps purported to comply with certain traditional districting criteria, *see, e.g.*, *id.* at 99–105, their experts never tried to show that their maps *also* achieved the General Assembly's recognized goal of "capitaliz[ing] on a partisan advantage," *id.* at 262, *see also id.* at 477, 490–91. Indeed, Plaintiffs' misuse of Section 2 as "a one-way partisan ratchet," Opening Br. 25, is irreconcilable with such a showing.

*Callais* takes a sledgehammer to Plaintiffs' litigating theory. Proof that "the State *could* create an additional majority-minority district" does *not* mean "the State's failure to do so violated" the statute. 146 S. Ct. at 1159. Instead, plaintiffs must "satisfy two conditions." *Id.* "First, in drawing illustrative maps, [they] cannot use race as a districting criterion." *Id.* Second, their "illustrative maps must meet all the State's legitimate districting objectives, including traditional districting criteria and the State's specified political goals"—such as "a target partisan distribution of voters." *Id.* Both rules are necessary "to disentangle race from politics and other constitutionally permissible considerations." *Id.* (quotation omitted). And because the Louisiana plaintiffs failed to "provide an illustrative map that met all the State's nonracial goals," they "did not meet their burden" under the first *Gingles* precondition. *Id.* at 1161.

12

By imposing these illustrative-map requirements, *Callais* expressly "update[d]" the governing legal "framework." *Id.* at 1159; *see also id.* at 1161. The Court's understanding that it *needed* to alter preexisting law to account for "statutory text" and "important developments," *id.* at 1157, is sufficient justify a new appellate argument here. But on top of that, *Callais* "overrules … a published decision of this Court." *See United States v. Durham*, 795 F.3d 1329, 1331 (11th Cir. 2015). This Court held in *Davis v. Chiles* that a Section 2 plaintiff *must* use race "as a factor in [the] process of designing" his illustrative maps. 139 F.3d at 1426. "[U]nder *Gingles*" and Circuit precedent applying it, the *Davis* Court explained, "we *require* plaintiffs to show that it is possible to draw majority-minority voting districts," meaning the plaintiff's use of race was necessary "to meet this burden." *Id.*

The district court relied on *Davis* to reject the Secretary's argument that Plaintiffs' maps "impermissibly took race into consideration," explaining that "[t]he Eleventh Circuit … has long held that the first *Gingles* precondition specifically requires that Plaintiffs' proposed maps consider race." Doc. 333 at 199 (citing *Davis*, 139 F.3d at 1425–26). But under *Callais*, "in drawing illustrative maps, plaintiffs *cannot* use race as a districting criterion." 146 S. Ct. at 1159 (emphasis added).

13

It is difficult to imagine a more direct conflict between an intervening Supreme Court decision and Circuit precedent. Because *Callais* "enable[s] [the Secretary] to bring [the] new claim or theory" that Plaintiffs' illustrative maps impermissibly consider race, *see United States v. McCullough*, 851 F.3d 1194, 1202 (11th Cir. 2017) (quotation omitted), this Court has yet another reason to reverse. Of course, it is "extra icing on a cake already frosted," *Van Buren v. United States*, 593 U.S. 374, 394 (2021) (quotation omitted), because *Callais* resolves multiple dispositive issues that the Secretary raised from the outset. *See* Part I, *supra*.

## CONCLUSION

This Court should reverse the judgment below.

Respectfully submitted.

Bryan P. Tyson
  *Special Asst. Att'y General*
David J. Younker
Tyson Younker LLC
1225 Johnson Ferry Road
Suite 600-A
Marietta, Georgia 30068
(678) 223-3160
btyson@tysonyounker.law

/s/ *John Henry Thompson*
Christopher M. Carr
  *Attorney General of Georgia*
John Henry Thompson
  *Solicitor General*
Elijah J. O'Kelley
  *Principal Deputy*
  *Solicitor General*
Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3373
jhthompson@law.ga.gov

14

# CERTIFICATE OF COMPLIANCE

This document complies with this Court's order requesting supplemental briefing because the body of this brief contains fewer than 15 pages.  *See* CA11 Doc. 182 at 4.

/s/ *John Henry Thompson*
John Henry Thompson

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

/s/ *John Henry Thompson*
John Henry Thompson