**No. 23-13914**
*(Consolidated with Nos. 23-13916 & 23-13921)*

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ALPHA PHI ALPHA FRATERNITY, INC., a nonprofit organization on behalf of members residing in Georgia; SIXTH DISTRICT OF THE AFRICAN METHODIST EPISCOPAL CHURCH, a Georgia nonprofit organization; ERIC T. WOODS; KENNETH GLENN; PHIL BROWN; *et al.*,

*Plaintiffs-Appellees*,

UNITED STATES OF AMERICA,

*Intervenor-Appellee*,

*v.*

SECRETARY, STATE OF GEORGIA, in his official capacity,

*Defendant-Appellant*.

---

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:21-cv-05337-SCJ (Hon. Steve C. Jones)

---

## SUPPLEMENTAL BRIEF OF PLAINTIFFS-APPELLEES

DEBO ADEGBILE
ROBERT BOONE
ALEX W. MILLER
MAURA DOUGLAS
JUAN M. RUIZ TORO
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800

CORY ISAACSON (Bar No. 983797)
AKIVA FREIDLIN (Bar No. 692290)
ACLU FOUNDATION OF
  GEORGIA, INC.
P.O. Box 570738
Atlanta, GA 30357
Telephone: (678) 981-5295

SOPHIA LIN LAKIN
ARI J. SAVITZKY
MING CHEUNG
ACLU FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
Telephone: (212) 519-7836

*Counsel for Plaintiffs-Appellees Alpha Phi Alpha Fraternity, Inc. et al. (No. 23-13914)*

June 19, 2026

---

ADDITIONAL COUNSEL ON INSIDE COVER

GEORGE P. VARGHESE
DENISE TSAI
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

MARISA A. DIGIUSEPPE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 443-5300

SONIKA R. DATA
ELIOT KIM
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone: (202) 663-6000

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1-26.1-3, Appellees *Alpha Phi Alpha Fraternity, Inc., Sixth District of the African Methodist Episcopal Church, Eric T. Woods, Kenneth Glenn, Phil Brown, and Janice Stewart* identify all Counsel, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

1. ACLU Foundation, Inc., *Counsel for Plaintiffs-Appellees*;

2. ACLU Foundation of Georgia, Inc., *Counsel for Plaintiffs-Appellees*;

3. Adegbile, Debo P., *Counsel for Plaintiffs-Appellees*;

4. Aiken, D'Ericka, *Counsel for Plaintiffs-Appellees*;

5. Albert M. Pearson LLC, *Counsel for Amicus*;

6. Allensworth, Robert M., *Attempted Amicus*;

7. Alpha Phi Alpha Fraternity, Inc., *Plaintiff-Appellee;*

8. Arbuthnot, Jacqueline Faye, *Grant Plaintiff-Appellee*;

9. Bokat-Lindell, Noah B., *Former Counsel for Intervenor*;

10. Boone, Robert, *Counsel for Plaintiffs-Appellees*;

11. Bowdre, Alexander Barrett, *Counsel for Amicus*;

12. Bowles, Jasmine, *Amicus*;

C1 of C10

13.    Boyle Jr., Donald P., *Counsel for Defendant-Appellant*;

14.    Brachman, Paul David, *Counsel for Amicus*;

15.    Brennan Center for Justice, *Amicus*;

16.    Brown, Phil, *Plaintiff-Appellee;*

17.    Brown, Theron, *Grant Plaintiff-Appellee*;

18.    Bush, Jacquelyn, *Grant Plaintiff-Appellee*;

19.    Calvo-Friedman, Jennesa, *Former Counsel for Plaintiffs-Appellees*;

20.    Cheung, Ming, *Counsel for Plaintiffs-Appellees*;

21.    Chosy, Annabel, *Counsel for Plaintiffs-Appellees*;

22.    Common Cause, *Amicus*;

23.    Conner, Mary Nell, *Grant Plaintiff-Appellee*;

24.    Constitutional Accountability Center, *Amicus*;

25.    Data, Sonika, *Counsel for Plaintiffs-Appellees*;

26.    Davis, Alexander S., *Counsel for Amicus*;

27.    DiGiuseppe, Marisa A., *Counsel for Plaintiffs-Appellees*;

28.    Dixit, Anuj, *Former Counsel for Plaintiffs-Appellees*;

29.    Douglas, Maura, *Counsel for Plaintiffs-Appellees*;

30.    Draper, Paul R., *Former Counsel for Defendant-Appellant*;

31.    Duffey, William S., *Former Grant and Pendergrass Defendant-Appellant*;

32.    Election Law Clinic at Harvard Law School, *Amicus*;

C2 of C10

33. Elias Law Group LLP, *Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

34. Fair Districts GA, *Amicus*;

35. Ford, Christina Ashley, *Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

36. Freeman, Daniel J., *Former Counsel for Intervenor*;

37. Freidlin, Akiva Hibel, *Counsel for Plaintiffs-Appellees*;

38. Hamilton, Kevin J., *Former Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

39. Hughes, Aileen Bell, *Former Counsel for Intervenor*;

40. GALEO Latino Community Development Fund, Inc., *Amicus*;

41. Garabadu, Rahul, *Former Counsel for Plaintiffs-Appellees*;

42. Geaghan-Breiner, Charlotte, *Counsel for Plaintiffs-Appellees*;

43. Geiger, Soren, *Former Counsel for Amicus*;

44. Genberg, Jack, *Counsel for Amicus*;

45. Georgia Coalition for the People's Agenda, *Amicus*;

46. Georgia Department of Law, *Counsel for Defendant-Appellant*;

47. Georgia State Conference of the NAACP, *Amicus*;

48. Ghazal, Sara Tindall, *Former Grant and Pendergrass Defendant-Appellant*;

49. Glaze, Ojuan, *Pendergrass Plaintiff-Appellee*;

50. Goldman, David N., *Counsel for Intervenor*;

51.    Glenn, Katie Bailey, *Former Plaintiff-Appellee*;

52.    Glenn, Kenneth, *Plaintiff-Appellee*;

53.    Gorod, Brianne Jenna, *Counsel for Amicus*;

54.    Grant, Annie Lois, *Grant Plaintiff-Appellee*;

55.    Graves, Cheryl, *Amicus*;

56.    Greenwood, Ruth M., *Counsel for Amicus*;

57.    Harrison, Keith, *Counsel for Amicus*;

58.    Hawley, Jonathan Patrick, *Former Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

59.    Holtzman Vogel, PLLC, *Counsel for Amicus*;

60.    Heard, Bradley E., *Counsel for Amicus*;

61.    Hennington, Elliott, *Pendergrass Plaintiff-Appellee*;

62.    Hessel, Daniel J., *Counsel for Amicus*;

63.    Houk, Julie M., *Counsel for Amicus*;

64.    Howell, Quentin T., *Grant Plaintiff-Appellee*;

65.    Isaacson, Cory, *Counsel for Plaintiffs-Appellees*;

66.    Ivey, Marvis McDaniel, *Amicus*;

67.    Jacoutot, Bryan Francis, *Former Counsel for Defendant-Appellant*;

68.    James, Triana Arnold, *Grant and Pendergrass Plaintiff-Appellee*;

69.    Johnston, Janice W., *Former Grant and Pendergrass Defendant-Appellant*;

70. Jones, Michael Brandon, *Former Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

71. Jones, Steve C., *District Court Judge*;

72. Kastorf Law LLP, *Counsel for Amicus*;

73. Kastorf, Kurt, *Counsel for Amicus*;

74. Khanna, Abha, *Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

75. Kim, Eliot, *Counsel for Plaintiffs-Appellees*;

76. Kim, Taeyoung, *Counsel for Plaintiffs-Appellees*;

77. Krevolin & Horst LLC, *Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

78. LaCour, Edmund, *Former Counsel for Amicus*;

79. Lakin, Sophia Lin, *Counsel for Plaintiffs-Appellees*;

80. LaRoss, Diane Festin, *Former Counsel for Defendant-Appellant*;

81. Lawyers' Committee for Civil Rights Under Law, *Counsel for Amicus*;

82. League of Women Voters of Georgia, *Amicus*;

83. Lee, Jason, *Former Counsel for Intervenor*;

84. Lee, Theresa J., *Counsel for Amicus*;

85. Le, Anh, *Former Grant Defendant-Appellant*;

86. Lewis, Joyce Gist, *Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

87. Lindsey, Edward, *Former Grant and Pendergrass Defendant-Appellant*;

88. Mashburn, Matthew, *Former Grant and Pendergrass Defendant-*

*Appellant*;

89.    May, Caitlin Felt, *Former Counsel for Plaintiffs-Appellees*;

90.    McGowan, Charlene, *Former Counsel for Defendant-Appellant*;

91.    Miller, Alex W., *Counsel for Plaintiffs-Appellees*;

92.    Mitchell, Cassie, *Counsel for Plaintiffs-Appellees*;

93.    Miller, Kelsey A., *Former Counsel for Plaintiffs-Appellees*;

94.    Miller, Lauren Elizabeth, *Counsel for Amicus*;

95.    National Republican Redistricting Trust, *Amicus*;

96.    O'Donnell, Courtney, *Counsel for Amicus*;

97.    O'Melveny & Myers LLP, *Former Counsel for Plaintiffs-Appellees*;

98.    Osher, Daniel C., *Former Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

99.    Paradise, Loree Anne, *Former Counsel for Defendant-Appellant*;

100.    Pearson, Albert Matthews, *Counsel for Amicus*;

101.    Pendergrass, Coakley, *Pendergrass Plaintiff-Appellee*;

102.    Perkins Coie LLP, *Former Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

103.    Perkins, Brianne, *Amicus*;

104.    Petrany, Stephen J., *Former Counsel for Defendant-Appellant*;

105.    Raffensperger, Bradford J., *Defendant-Appellant*;

106.    Reynolds, Garrett, *Grant Plaintiff-Appellee*;

107. Richards, Roberts, *Pendergrass Plaintiff-Appellee*;

108. Rollins-Boyd, David, *Counsel for Amicus*;

109. Rosenberg, Ezra D., *Counsel for Amicus*;

110. Rothfeld, Charles Alan, *Counsel for Amicus*;

111. Rueckert, Jens, *Pendergrass Plaintiff-Appellee*;

112. Ruiz Toro, Juan M., *Counsel for Plaintiffs-Appellees*;

113. Rutahindurwa, Makeba, *Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

114. Savitzky, Ari J., *Counsel for Plaintiffs-Appellees*;

115. Shaw, Abigail, *Former Counsel for Plaintiffs-Appellees*;

116. Sivaram, Anuradha, *Former Counsel for Plaintiffs-Appellees*;

117. Sixth District of the African Methodist Episcopal Church, *Plaintiff-Appellee;*

118. Solomon, Elbert, *Grant Plaintiff-Appellee*;

119. Southern Poverty Law Center, *Counsel for Amicus*;

120. Sparks, Adam M., *Counsel for Grant and Pendergrass Plaintiffs-Appellees*;

121. Smith, Casey Katharine, *Former Counsel for Plaintiffs-Appellees*;

122. Smith, Gambrell & Russell, LLP, *Former Counsel for Grant-Defendant Appellants*;

123. Stewart, Janice, *Plaintiff-Appellee;*

124. Stewart, Michael Elliot, *Former Counsel for Intervenor*;

125. Strickland, Frank B., *Counsel for Defendant-Appellant*;

126. Sykes, Eunice, *Grant Plaintiff-Appellee*;

127. Taylor English Duma LLP, *Counsel for Defendant-Appellant*;

128. Thomas, Ursula, *Amicus*;

129. Thompson, John Henry, *Counsel for Defendant-Appellant*;

130. Tolbert, Elroy, *Grant Plaintiff-Appellee*;

131. Torchinsky, Jason B., *Counsel for Amicus*;

132. Trento, Andrea W., *Counsel for Amicus*;

133. Tsai, Denise, *Counsel for Plaintiffs-Appellees*;

134. Tullin, Leah, *Counsel for Amicus*;

135. Tyson, Bryan P., *Counsel for Defendant-Appellant*;

136. United States Department of Justice, *Intervenor*;

137. Valerio-Esene, Amanda, *Counsel for Amicus*;

138. Varghese, George P., *Counsel for Plaintiffs-Appellees*;

139. Vaseghi, Bardia, *Counsel for Plaintiffs-Appellees*;

140. Vaughan, Elizabeth Marie Wilson, *Former Counsel for Defendant-Appellant*;

141. Weigel, Daniel H., *Former Counsel for Defendant-Appellant*;

142. Webb, Bryan K., *Counsel for Defendant-Appellant*;

143. Weitzman, Samuel, *Former Counsel for Plaintiffs-Appellees*;

144. White, Graham W., *Former Counsel for Grant Plaintiffs-Appellees*;

145. Willard, Russell D., *Counsel for Defendant-Appellant*;

146. Williams, Ayana, *Former Counsel for Plaintiffs-Appellees*;

147. Williams, H. Benjamin, *Amicus*;

148. Williams, Edward, *Former Counsel for Plaintiffs-Appellees*;

149. Wilmer Cutler Pickering Hale and Dorr LLP, *Counsel for Plaintiffs-Appellees;*

150. Wimbish, Dexter, *Grant Plaintiff-Appellee*;

151. Woods, Eric T., *Plaintiff-Appellee;*

152. Young, Sean Jengwei, *Former Counsel for Plaintiffs-Appellees*;

153. Zabel, Joseph D., *Former Counsel for Plaintiffs-Appellees.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Plaintiffs-Appellees state that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

Dated: June 19, 2026              */s/ Sophia Lin Lakin*
                                       SOPHIA LIN LAKIN
                                       *Counsel for Plaintiffs-Appellees*
                                       *Alpha Phi Alpha Fraternity, Inc. et al.*
                                       *(No. 23-13914)*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ..............................................................................................1

ARGUMENT .....................................................................................................4

I.    *CALLAIS* DOES NOT REQUIRE REVERSAL ............................................4

    A.    The Secretary's *Gingles* 1 Arguments Provide No Basis
       For Reversal ......................................................................................4

    B.    Plaintiffs' Evidence Sufficiently Controlled For
       Partisanship ......................................................................................8

    C.    Plaintiffs Satisfied The Totality Of The Circumstances
       Test ................................................................................................10

II.   IF AN UPDATED ANALYSIS IS NEEDED, THIS COURT SHOULD
    VACATE AND REMAND WITH GUIDANCE FOR THE DISTRICT
    COURT ................................................................................................12

CONCLUSION ................................................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Alexander v. South Carolina State Conference of the NAACP,*
    602 U.S. 1 (2024)........................................................................6

*Allen v. Milligan*, 599 U.S. 1 (2023)......................................................1

*Callahan v. HHS*, 939 F.3d 1251 (11th Cir. 2019)..................................13

*Davis v. Chiles*, 139 F.3d 1414 (11th Cir. 1998).......................................5

*Louisiana v. Callais,* 146 S. Ct. 1131 (2026) ..................................... 1-8, 10, 11, 14

*Miller v. Johnson*, 515 U.S. 900 (1995)..................................................6

*Patterson v. Warner*, 415 U.S. 303 (1974) ...........................................13

*Powell v. School Board of Volusia County*,
    86 F.4th 881 (11th Cir. 2023).....................................................4, 13

*Rogers v. Lodge*, 458 U.S. 613 (1982)....................................................12

*South Carolina State Conference of NAACP v. Alexander*,
    649 F. Supp. 3d 177 (D.S.C. 2023) ...............................................6

*Thomas v. Attorney General, Florida*, 795 F.3d 1286 (11th Cir. 2015)..................13

*Thornburg v. Gingles*, 478 U.S. 30 (1986) .............................................12

*United States v. Aguiar Parada*, No. 24-12775,
    2026 WL 936146 (11th Cir. Apr. 7, 2026)...................................2, 13

*United States v. Marengo County Commission*, 731 F.2d 1546
    (11th Cir. 1984) ......................................................................12

*United States v. Pickett*, 916 F.3d 960 (11th Cir. 2019) ............................4

*United States v. Republic of Honduras*, 75 F.4th 1288 (11th Cir. 2023) ................13

*White v. Regester*, 412 U.S. 755 (1973)..................................................12

*Worthy v. City of Phenix City*, 930 F.3d 1206 (11th Cir. 2019) ...............................9

*Zimmer v. McKeithen*, 485 F.2d 1297 (5th Cir. 1973) ...........................................12

**DOCKETED CASES**

*Alabama State Conference of the NAACP v. Secretary of State for Alabama*, No. 25-13007 (11th Cir.) ................................................14

*Nairne v. Landry*, No. 24-30115 (5th Cir.) .........................................................14

*State Board of Election Commissioners v. Mississippi State Conference of the National Association for the Advancement of Colored People*, No. 25-234 (U.S.) .................................................14

*Turtle Mountain Band of Chippewa Indians v. Howe*, No. 25-253 (U.S.) ..........................................................................................14

*White v. State Board of Election Commissioners*, No. 25-60506 (5th Cir.) ..................14

**LEGISLATIVE MATERIALS**

S. Rep. No. 97-417, 1982 U.S.C.C.A.N. 177 .......................................................12

**OTHER AUTHORITIES**

Bluestein, Greg, *Georgia House Leaders Nix Redistricting Plans Amid Pushback*, Atlanta Journal Constitution (June 17, 2026), https://tinyurl.com/ynevs7js (https://www.ajc.com/politics/2026/06/georgia-house-leaders-nix-redistricting-plans-over-fears-of-energizing-democrats/) ......................15

Timm, Jane C. & Matt Dixon, *South Carolina's Trump-backed Redistricting Push Fails in the State Senate Amid GOP Opposition,* NBC News (May 26, 2026), https://tinyurl.com/3xm7karf (https://www.nbcnews.com/politics/2026-election/south-carolinas-redistricting-effort-fails-state-senate-gop-opposition-rcna346962) ...........................................................................15

**INTRODUCTION**

The Supreme Court in *Louisiana v. Callais* "update[d] the *Gingles* framework" applied by the district court here by adding four discrete factors to the *Gingles* test. 146 S. Ct. 1131, 1159 (2026). *Callais* confirmed the constitutionality of Section 2, and in no way requires reversal of the district court's judgment. The evidence already in the extensive trial record satisfies most aspects of the "updated" *Gingles* test. And to the extent any aspect of the new *Callais* factors is not already addressed by the existing record, this Court should follow its longstanding practice of vacating and remanding for further proceedings in light of the new precedent. The district court can then decide what further proceedings are warranted.

The Secretary's arguments for reversal misconstrue *Callais* and ignore the trial record, and this Court should reject them all. To start, *Callais* reiterated that, consistent with *Allen v. Milligan*, 599 U.S. 1 (2023), Section 2 consists of "an effects test," and "does not demand a finding of intentional discrimination." *Callais*, 146 S. Ct. at 1145, 1156. And it held that Section 2 "fit[s] within Congress's … enforcement power" so long as liability is established under the "updated" *Gingles* test. *Id.* at 1155-1156. That holding forecloses the Secretary's argument that applying Section 2 here would be unconstitutional. Supp. Br. 9.

The "updated" *Gingles* test has four parts. As to the first *Gingles* factor, plaintiffs must now show that a reasonably configured, majority-minority district

1

can be created without "us[ing] race as a districting criterion." *Callais*, 146 S. Ct. at 1159. Plaintiffs must also account for the legislature's "legitimate districting objectives," including "specified political goals." *Id.* As to the second and third *Gingles* factors, *Callais* instructs that plaintiffs must now "provide an analysis [of racially polarized voting] that controls for party affiliation," by showing that racial bloc voting "cannot be explained" by just "partisan affiliation." *Id.* at 1159. And finally, as to the totality of the circumstances, courts must give greater weight to "'current data' and 'current political conditions' that shed light on current intentional discrimination." *Id.* at 1160.

The new requirement to draw maps without using race as a districting criterion may require remand because no such maps were required at trial. It is standard practice for this Court to "remand when intervening authority alters … the relevant legal standard." *E.g.*, *United States v. Aguiar Parada*, No. 24-12775, 2026 WL 936146, at *1 (11th Cir. Apr. 7, 2026) (per curiam). The Secretary offers no good reason to depart from that practice, which ensures that the fact-intensive questions raised by a new legal standard are resolved by the district court in the first instance, with the benefit of whatever discovery and further proceedings may be warranted.

*Callais*'s other updates to the *Gingles* test are either inapplicable or already satisfied by the existing record, and this Court can so hold, which will help provide guidance to the district court.

2

As to the first *Gingles* precondition, Georgia's formal redistricting guidelines do not include partisan advantage as a factor. *See* Doc. 333 ("Op.") 41-43. And the trial record does not show that the Georgia legislature "specified" any "political goals" (such as a "target partisan distribution" or "specific margin of victory") in enacting the challenged State Senate and State House maps. *Callais*, 146 S. Ct. at 1159; *see* Op. 97 (crediting Mr. Cooper's testimony that "he followed the criteria in Georgia's districting guidelines when drawing" the state legislative districts). This updated factor is simply immaterial to the facts of this case.

*Callais*'s other new requirements are already satisfied under the existing trial record. As to separating partisan affiliation from racial polarization (the second and third *Gingles* preconditions), the Secretary ignores extensive record evidence disentangling race and party and showing that the stark patterns of racially polarized voting in the areas of Georgia at issue in this case are driven by race, *Callais*, 146 S. Ct. at 1159-1160. *See* Op. 73-75 (racial polarization persists in primaries and intra-party runoffs); Op. 452-453, 457-458 (Secretary's own expert conceding he could not determine whether party alone explains the data); Doc. 222 at 191-193. And as to the totality of the circumstances, the trial record contains ample evidence from present-day circumstances that establishes the required strong inference of intentional discrimination, *Callais*, 146 S. Ct. at 1159-1160. *See* Op. 211, 451-480. The Court can reject the Secretary's arguments and determine that these two *Callais*

factors are satisfied (or likely will be satisfied) based on the existing record.

Accordingly, this Court should reject the Secretary's arguments, confirm the extent to which the existing trial record already satisfies the new *Callais* factors, and, if necessary, remand for further proceedings to allow Plaintiffs to supplement the record to address the updated standard announced in *Callais*.

## ARGUMENT

### I.    *CALLAIS* DOES NOT REQUIRE REVERSAL

The Secretary offers no persuasive basis to reverse. The record and the district court's credited findings already satisfy most if not all of *Callais*'s updated test. And *Callais* itself holds that Section 2 is constitutional when that test is met. *Louisiana v. Callais*, 146 S. Ct. 1131, 1155-1156 (2026). This Court can determine the extent to which the existing record already satisfies *Callais*, and then, if needed, remand (as is its ordinary practice) for further proceedings consistent with this Court's opinion. *See United States v. Pickett*, 916 F.3d 960, 967 (11th Cir. 2019); *Powell v. School Bd. of Volusia Cnty.*, 86 F.4th 881, 883 (11th Cir. 2023).

### A.    The Secretary's *Gingles* 1 Arguments Provide No Basis For Reversal

The Secretary is right that *Callais* "revises the first *Gingles* precondition" but very wrong that it "dooms the judgment below." Supp. Br. 11-14.

The new requirement that plaintiffs draw illustrative maps without "us[ing] race as a districting criterion," *Callais*, 146 S. Ct. at 1159, may require remand if the

4

Court concludes that the consideration of some racial data in drawing Plaintiffs' illustrative maps was inconsistent with the new legal standard.[1]  But while remand to allow Plaintiffs to supplement as necessary would be proper, it is not obvious that the plans already in the record are unusable under *Callais*.

The Secretary suggests that *Callais* overruled *Davis v. Chiles*, 139 F.3d 1414 (11th Cir. 1998), but *Davis* and *Callais* are not in conflict.  *Davis* held that considering race "to show that it is possible to draw majority-minority voting districts" is not *per se* impermissible and is not racial gerrymandering.  *Id.* at 1426. That follows from the first *Gingles* precondition: plaintiffs cannot show that a minority population is sufficiently large and compact to form a majority in an additional district without some awareness of racial demographics.  *Id.*  *Callais* did not reject that basic point.  *See* 146 S. Ct. at 1159.  It instead reaffirmed that plaintiffs

---

[1] Mr. William Cooper, Plaintiffs' mapdrawer, testified extensively about his process—and the district court found that Mr. Cooper was "highly credible" and that race did not predominate.  Op. 196; *see id.* at 276 (crediting testimony "that race did not outweigh any of the other traditional redistricting principles" and "didn't control how these districts were drawn").  Indeed, Mr. Cooper repeatedly testified that, consistent with his decades-long practice, he never used racial shading to identify majority-Black precincts or areas.  Doc. 383 (Sept. 5 PM Tr.) 197:23-24; *see also* Doc. 325 (Sept. 5 AM Tr.) 112:11-14; Doc. 326 (Sept. 6 AM Tr.) 358:9-12.  He only considered racial data to the extent that he sometimes "displayed dots showing him where precincts with more than 30% Black population were located."  Op. 80.  This minimal consideration of race did not predominate, the court found, because Mr. Cooper appropriately balanced it against factors including "population equality, compactness, contiguity, respect for political subdivision lines like counties and voting tabulation districts," and "respect for communities of interest."  *Id.* at 97.

must show that an additional majority-minority district is possible, and added only that "in drawing illustrative maps, plaintiffs cannot use race as a districting criterion," *id.*—which is best understood as barring plaintiffs from letting race drive or predominate their drawing of the district lines or displacing legitimate redistricting considerations.  Indeed, in *Callais* (146 S. Ct. at 1159), the Court relied on *Alexander v. South Carolina State Conference of the NAACP*, which reiterated that a mapdrawer's "awareness of … racial demographics" does not demonstrate predominance of racial considerations and thus does not raise constitutional concerns.[2]  602 U.S. 1, 37 (2024); *see also Miller v. Johnson*, 515 U.S. 900, 915-916 (1995) ("Redistricting legislatures will … almost always be aware of racial demographics; but it does not follow that race predominates in the redistricting process.")).  Race did not predominate in Plaintiffs' illustrative plans.

*Callais* also holds that a plaintiff's illustrative maps must "meet all the State's legitimate districting objectives, including traditional districting criteria and the State's specified political goals," which can include "a target partisan distribution of voters" if identified by the legislature.  146 S. Ct. at 1159.  But Georgia's written guidelines for drafting maps specified no such goal.  Instead, they identified

---

[2] That is true even when the mapdrawer had such "detailed knowledge … regarding the racial demographics of the state down to the individual precinct level" that he could recall from memory the Black population of specific precincts moved.  *See South Carolina State Conf. of NAACP v. Alexander*, 649 F. Supp. 3d 177, 191 n.12 (D.S.C. 2023).

population equality, contiguity, compactness, counties and precincts, communities of interest, avoiding unnecessary incumbent pairings, and compliance with Section 2. Op. 41-43. The district court found that Plaintiffs' mapdrawer followed the guidelines Georgia actually adopted in configuring the illustrative plans in the trial record. Op. 98-107, 197-201. The *Callais* requirement to "meet all the State's legitimate districting objectives" is thus satisfied by the existing illustrative plans.

The Secretary asks this Court to treat partisanship as a "specified political goal" of the Legislature that Plaintiffs were required to replicate under *Callais*, citing a single statement in the district court's opinion crediting testimony that, in configuring a split of Cobb County in the state's *congressional plan*, the legislators in charge of the mapdrawing process sought to "capitalize on a partisan advantage," Op. 262. But that finding concerns a different map, and identifies no partisan objective (formally adopted or otherwise) for the state legislative plans at issue here. It certainly does not establish the kind of "specified political goal" *Callais* contemplates—i.e., a "target partisan distribution" or "specific margin of victory"— identified *ex ante* with sufficient clarity that it might constitute a formal districting objective that Plaintiffs' illustrative maps must match. 146 S. Ct. at 1159.

Nothing in *Callais* comes close to warranting reversal here. At most, a remand may be appropriate for Plaintiffs to supplement the record to satisfy the *Callais* standard.

7

### B.    Plaintiffs' Evidence Sufficiently Controlled For Partisanship

*Callais* also requires an "analysis that controls for party affiliation."  146 S. Ct. at 1159.  One way to do so is through evidence of "intra-party racial-bloc voting." *Id.*  Contrary to the Secretary's arguments, Supp. Br. 6, Plaintiffs offered that here.

In *Callais*, the Court held up the facts in *Gingles* as "a good example of how a § 2 plaintiff can properly meet" the updated test, because in *Gingles*, "black and white voters had dramatically different voting patterns within the Democratic party." *Callais*, 146 S. Ct. at 1159.  The record here reflects the same kind of intra-party disparity.  One of Plaintiffs' experts, Dr. Lisa Handley, analyzed 11 statewide Democratic primaries and Democratic runoffs between 2016 and 2020.  Doc. 222 at 191-192.  By focusing on intra-party primaries, that analysis directly "controls for party affiliation" by examining elections in which differences in voter preferences could not be explained by voters choosing between candidates of different parties.

Dr. Handley "found that [within those elections] the majority (55.8%) of the contests [she] analyzed were racially polarized" and that White support for Black-preferred Black candidates was typically very low.  Doc. 222 at 191-192.  And rather than question the reliability or substance of that statistical analysis, Op. 73-75, 419-420, the Secretary's expert, Dr. John Alford, acknowledged that this type of analysis provides a valuable "opportunity to see how voters are voting when that party cue at the candidate level is removed."  Doc. 332 (Sept. 14 AM Tr.) 2234:1-4; *see also* Op.

8

452-453, 457-458.  The district court credited Dr. Handley's full testimony, Op. 73-75, 419-420, and relied on it[3]—along with corroborating testimony from Drs. Jason Ward, Orville Vernon Burton, and Adrienne Jones on the persistent role of race in Georgia elections—in concluding that Plaintiffs satisfied the second and third *Gingles* preconditions.  Op. 408-420, 451-458.

Indeed, the district court found that *the Secretary's evidence*—not Plaintiffs'—failed to disentangle race and partisanship.  The court found that Dr. Alford's testimony "primarily relates to partisan polarization and not racial polarization," and gave it "little weight" on the *Gingles* preconditions.  Op. 77.  It further found that Dr. Alford's analysis did not offer "support for a conclusion that voter behavior [was] caused by partisanship rather than race."  Op. 457-458; *see also* Op. 488-489.  The Secretary mentions none of this in arguing for reversal.

*Callais* may have changed the lens through which the existing record is viewed, but it did not change the record itself.  The record showed racial polarization even within a single party.  The Secretary's own expert could not explain it away.  On this record, even applying the updated *Callais* test, the district court committed

---

[3] The district court broadly credited and relied upon Dr. Handley's racial-polarization analysis.  Op. 73-75, 419-420.  To the extent the court did not expressly rely on the Democratic-primary analysis discussed in this section, that analysis remains record evidence supporting affirmance, and this Court "may affirm for any reason supported by the record, even if not relied upon by the district court[.]" *Worthy v. City of Phenix City*, 930 F.3d 1206, 1216-1217 (11th Cir. 2019).

no clear error in finding that Plaintiffs satisfied the second and third *Gingles* preconditions.  And if there were any doubt about that conclusion on this fact-intensive question, the right approach would be to remand for further consideration.

### C.    Plaintiffs Satisfied The Totality Of The Circumstances Test

The Secretary also argues that *Callais* requires reversal because the totality-of-the-circumstances inquiry must focus exclusively on "present-day intentional racial discrimination regarding voting."  Supp. Br. 7-9.  That argument likewise ignores the record and overreads *Callais*.

*Callais* does direct courts to focus on present-day evidence, explaining that "current data" and "current political conditions" are "far more germane" than discrimination that occurred long ago or present-day disparities framed only as the lingering "effects of societal discrimination."  146 S. Ct. at 1160.  But the district court here placed significant weight on present-day evidence.  It relied on stark racial polarization in the challenged areas.  Op. 408-420, 451-458.  It documented lower Black voter turnout and current socioeconomic disparities that depress political participation.  Op. 458-465.  It considered contemporary evidence about racial appeals and the relationship between race, party, and candidate support.  Op. 451-458, 465-467.  And after weighing Black candidate success, the court concluded that the totality of the circumstances favored liability in the areas where Plaintiffs prevailed.  Op. 467-480.  The Secretary resists this conclusion by seizing on the

10

district court's observation that "over the last fifty years Georgia has become increasingly politically open to Black voters," which he declares "conclusive." Supp. Br. 8. But the opinion's very next sentence rebuts him: "The whole of the evidence shows that the political process is not currently equally open to Black Georgians." Op. 211. That is a present-day finding about current political conditions—precisely what *Callais* requires.

And though *Callais* directs courts to focus on present-day evidence, it does not make historical evidence irrelevant or require direct proof of discriminatory intent. The Court stated that Section 2 "does not demand a finding of intentional discrimination," and that a Section 2 violation may be established "when the circumstances give rise to a strong inference that intentional discrimination occurred." 146 S. Ct. at 1156. *Callais* did change the weight courts should give historical evidence relative to current data and present-day political conditions, but less weight is not no weight. And here, the record contains overwhelming—and largely undisputed—historical evidence of racial discrimination in Georgia's voting practices. *See* Op. 216-219, 408-480.

Indeed, properly viewed, *Callais*'s reference to a "strong inference" of intentional discrimination is merely a reminder of the origins of Section 2's totality-of-the-circumstances test. In *Gingles*, the Supreme Court identified a set of factors—now called the "Senate Factors"—that the Senate Judiciary Committee

11

viewed as indicating vote dilution. *Thornburg v. Gingles*, 478 U.S. 30, 36-37 (1986) (citing S. Rep. No. 97-417, 28-30, 1982 U.S.C.C.A.N. 177, 205-207). The Committee drew those factors from the Fifth Circuit's decision in an *intentional* vote dilution case, *Zimmer v. McKeithen*, 485 F.2d 1297 (5th Cir. 1973). S. Rep. No. 97-417, at 28 n.113 ("These factors are derived from the analytical framework used by the Supreme Court in *White* [*v. Regester*, 412 U.S. 755 (1973)], as articulated in *Zimmer*."); *cf. Rogers v. Lodge*, 458 U.S. 613, 618 (1982) (in vote dilution context, "invidious discriminatory purpose may often be inferred from the totality of the relevant facts"). Satisfying the *Gingles* test—now as updated by *Callais*—means that a plaintiff has necessarily adduced facts supporting an inference of intentional discrimination. That has always been the case. *E.g.*, *White*, 412 U.S. at 765-770 (affirming finding of "invidious" discrimination based on analysis of what would become the Senate Factors); *cf. United States v. Marengo County Comm'n*, 731 F.2d 1546, 1567 (11th Cir. 1984).

Again, because the record contains the present-day evidence *Callais* requires, the Court should affirm as to this aspect of Section 2 liability. And the alternative would (again) be remand so the district court can consider these issues first.

## II.    IF AN UPDATED ANALYSIS IS NEEDED, THIS COURT SHOULD VACATE AND REMAND WITH GUIDANCE FOR THE DISTRICT COURT

To the extent the Court believes a revised legal analysis and/or new factual findings, including the submission of additional maps, are needed in light of

*Callais*'s updated standard, the appropriate course would be to vacate and remand for further proceedings consistent with this Court's opinion. In doing so, the Court should identify which aspects of *Callais* the existing record already satisfies, so the district court and the parties may focus any further proceedings on what remains.

Vacatur is the default remedy when there is an intervening change in the law, because it is "desirable that the District Court, in the first instance, evaluate the effect of that intervening decision." *Patterson v. Warner*, 415 U.S. 303, 307 (1974). This Court has adopted the same practice. In *Powell*, the Court vacated the district court's dismissal order and "remand[ed] the case for further proceedings consistent with the holding in" an intervening Supreme Court decision. 86 F.4th at 883. It did the same in *United States v. Republic of Honduras*, 75 F.4th 1288, 1289 (11th Cir. 2023) (*en banc*), and in *Thomas v. Attorney General, Florida*, 795 F.3d 1286 (11th Cir. 2015), where it remanded to the district court with instructions to "consider the intervening changes in the law," *see id.* at 1294. *See also United States v. Aguiar Parada*, No. 24-12775, 2026 WL 936146, at *1 (11th Cir. Apr. 7, 2026) (collecting cases).

If the Court believes further analysis is needed, vacating and remanding makes sense here because Section 2 cases require "an intensely local appraisal" to assess whether the political process is equally open to minority voters. *Callais*, 146 S. Ct. at 1174. This Court has rightly hesitated to resolve "fact-sensitive" issues the district court never had an opportunity to address. *Callahan v. HHS*, 939 F.3d 1251,

1266 (11th Cir. 2019). Here, that may include how Dr. Handley's analysis of intra-party polarization fares under *Callais*; whether Plaintiffs can satisfy the first *Gingles* precondition; and how Plaintiffs' evidence fares under the revised totality test.

That is how appellate courts, including this one, have handled post-*Callais* proceedings. The Supreme Court has twice vacated and remanded appeals of Section 2 cases in light of *Callais*. *See* Order, *State Bd. of Election Comm'rs v. Mississippi State Conf. of the NAACP*, No. 25-234 (U.S. May 18, 2026); Order, *Turtle Mountain Band of Chippewa Indians v. Howe*, No. 25-253 (U.S. May 18, 2026). A panel in this Circuit and two Fifth Circuit panels have done the same. *See* Order, *Alabama State Conf. of the NAACP v. Secretary of State for Ala.*, No. 25-13007, Dkt. 86-1 (11th Cir. June 8, 2026); Order, *White v. State Bd. of Election Comm'rs*, No. 25-60506, Dkt. 52-2 (5th Cir. May 11, 2026); Order, *Nairne v. Landry*, No. 24-30115, Dkt. 386-1 (5th Cir. May 7, 2026).

Indeed, the Secretary seems to agree vacatur and remand could be appropriate. *See* Supp. Br. 2. But he asks the Court to reverse anyway, based on arguments that misread *Callais* and ignore the extensive, existing trial record. *See supra* at 6-12. This Court should reject the Secretary's arguments for reversal. Doing so will offer clear guidance to the district court and ensure that any subsequent proceedings are not infected by the Secretary's misplaced legal arguments.

Finally, the Secretary suggests that a possible special session might "moot this

14

litigation, which would also necessitate vacatur." Supp. Br. 2. But Georgia has not enacted a new state legislative map, and more recent news reports indicate the legislature does not intend to do so in the upcoming special session. *See* Bluestein, *Georgia House Leaders Nix Redistricting Plans Amid Pushback*, Atlanta J. Constitution (June 17, 2026), https://tinyurl.com/ynevs7js. The Secretary's speculation that something else might happen cannot moot the existing judgment.[4] If Georgia later enacts a new map that affects the challenged plans or the relief at issue, the district court can address mootness or other remedial questions.

## CONCLUSION

The Court should reject the Secretary's erroneous legal arguments for reversal, clarify the law with respect to the *Callais* "updates" to the *Gingles* Section 2 framework, and, if this Court believes it is needed, vacate and remand so that the district court can hold any further proceedings that may be warranted under *Callais* and this Court's opinion.

---

[4] Recent experience illustrates why presuming legislative action is premature. Following *Callais*, the Governor of South Carolina convened a special session of the state legislature to pass new districting maps, and the legislature ultimately adjourned without enacting any new maps. Timm and Dixon, *South Carolina's Trump-backed Redistricting Push Fails in the State Senate Amid GOP Opposition*, NBC News (May 26, 2026), https://tinyurl.com/3xm7karf.

Respectfully submitted.

/s/ Sophia Lin Lakin

DEBO ADEGBILE                           SOPHIA LIN LAKIN
ROBERT BOONE                            ARI J. SAVITZKY
ALEX W. MILLER                          MING CHEUNG
MAURA DOUGLAS                           ACLU FOUNDATION
JUAN M. RUIZ TORO                       125 Broad Street, 18th Floor
WILMER CUTLER PICKERING                 New York, NY 10004
  HALE AND DORR LLP                     Telephone: (212) 519-7836
7 World Trade Center
250 Greenwich Street                    CORY ISAACSON (Bar No. 983797)
New York, NY 10007                      AKIVA FREIDLIN (Bar No. 692290)
Telephone: (212) 230-8800               ACLU FOUNDATION OF
                                          GEORGIA, INC.
GEORGE P. VARGHESE                      P.O. Box 570738
DENISE TSAI                             Atlanta, GA 30357
WILMER CUTLER PICKERING                 Telephone: (678) 981-5295
  HALE AND DORR LLP
60 State Street                         SONIKA R. DATA
Boston, MA 02109                        ELIOT KIM
Telephone: (617) 526-6000               WILMER CUTLER PICKERING
                                          HALE AND DORR LLP
MARISA A. DIGIUSEPPE                    2100 Pennsylvania Avenue NW
WILMER CUTLER PICKERING                 Washington, D.C. 20037
  HALE AND DORR LLP                     Telephone: (202) 663-6000
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 443-5300

*Counsel for Plaintiffs-Appellees*
*Alpha Phi Alpha Fraternity, Inc. et al. (No. 23-13914)*

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f) and 11th Circuit Rule 32-4, the brief contains 3,715 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: June 19, 2026                 /s/ Sophia Lin Lakin
                                     SOPHIA LIN LAKIN

17

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2026, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will automatically send a notice of the electronic filing to all registered CM/ECF users who have entered an appearance in the case.

Dated: June 19, 2026                      */s/ Sophia Lin Lakin*
                                          SOPHIA LIN LAKIN